Present:  Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan,
Koontz, and Kinser, JJ.

LAURA LEE COMBS

v.  Record No. 990534  OPINION BY JUSTICE CYNTHIA D. KINSER
                                          March 3, 2000
VIRGINIA ELECTRIC & POWER COMPANY, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge


In this personal injury action, the sole question is

whether the circuit court correctly ruled that an

employee's exclusive remedy against an employer is under

the Virginia Workers' Compensation Act (the Act), Code

§§ 65.2-100 through -1310.  Because we conclude that the

employee suffered an "injury by accident arising out of and

in the course of . . . employment," Code § 65.2-101, we

will affirm the circuit court's judgment sustaining the

employer's special plea in bar.

FACTS AND PROCEEDINGS

Virginia Electric and Power Company (Virginia Power)

arranged for an independent instructor to teach an aerobics

class at its Richmond office for the benefit of its

employees.  Participation in the class by Virginia Power's

employees was voluntary.  Virginia Power advertised the

    [1] Justice Compton participated in the hearing and
decision of this case prior to the effective date of his
retirement on February 2, 2000.

class on its bulletin boards and in its newsletter. It did not charge for the use of its facility, but participating employees were required to pay a fee to the instructor for the class.

The plaintiff, Laura Lee Combs, was an employee of Virginia Power. During her lunch hour on May 24, 1994, Combs participated in the aerobics class and, while doing so, developed a severe headache. The aerobics instructor assisted Combs in lying down and then called Virginia Power's Employee Health Services (EHS), as she had been instructed to do by the EHS coordinator of health programs. The EHS receptionist answered the call and informed Sharon Robinson, EHS coordinator of administrative support, that someone in the aerobics class had a headache and needed some medication. Shortly thereafter, Robinson went to the aerobics room to determine what was happening with regard to Combs. When Combs' head pain did not subside, she was taken to the EHS "quiet room" to rest. The "quiet room" is used by employees who become ill at work, or by recuperating employees who have returned to work after an accident or illness and need to rest during the workday. When an employee is using the room, an EHS staff member is required to be in the office, and the employee is to be checked at regular intervals.

2

After she went to the "quiet room," Combs was not examined by any medical or emergency personnel, nor was her condition regularly monitored by anyone. Approximately two hours after Combs entered the "quiet room," Robinson checked on Combs and discovered that Combs had vomited on herself and was in a coma-like state. Robinson then called security. Combs was eventually transported by ambulance to the Medical College of Virginia where she was diagnosed with intracranial bleeding, a right giant middle cerebral aneurysm, and an intraparenchymal hemorrhage. She subsequently underwent two neurological operations. After release from the hospital, she entered a rehabilitation center where she received therapy for her partial paralysis and cognitive brain damage.

On April 30, 1996, Combs filed a motion for judgment against Virginia Power and four of its employees, alleging that the defendants owed her a duty to "have in place proper procedures, and to properly train . . . personnel, so that employees using EHS could do so without harm to themselves and detriment to their well-being." Combs further asserted that the defendants breached these duties and were negligent by, inter alia, failing to properly train non-medical personnel working in EHS; failing to implement procedures to provide appropriate medical care to

3

Virginia Power employees who seek treatment at EHS, especially when licensed healthcare professionals are unavailable; and failing to provide proper medical care and treatment when Combs suffered a medical emergency, thereby leaving her unattended for approximately two hours before calling security and a rescue squad. Finally, Combs alleged that the defendants' negligence proximately caused her injury and damages.[2]

In response, the defendants filed grounds of defense and a "Special Plea of Workers' Compensation Bar." In the special plea, they asserted that the exclusivity provision of the Act, Code § 65.2-307, barred Combs' claim and therefore deprived the circuit court of subject matter jurisdiction over her claim.[3] Accordingly, the defendants asked the court to dismiss Combs' action.

After reviewing the parties' memoranda, the circuit court sustained the special plea and dismissed Combs'

---

[2] Combs also filed a claim with the Virginia Workers' Compensation Commission on May 23, 1996. Virginia Power subsequently filed a report regarding the accident with the Commission.

[3] Code § 65.2-307 provides that "[t]he rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee . . . on account of such injury . . . ."

action with prejudice.  In a letter opinion, the court concluded that the aggravation and acceleration of Combs' pre-existing aneurysm was "an injury by accident arising out of and in the course of her employment with" Virginia Power, and that her action was therefore barred by the exclusivity provision of the Act.  We awarded Combs this appeal.

### ANALYSIS

"An injury is subject to the exclusivity provision of the Act if it is the result of an accident and arises out of and in the course of the employment." Richmond Newspapers, Inc. v. Hazelwood, 249 Va. 369, 372, 457 S.E.2d 56, 58 (1995).  Thus, the critical inquiry in this appeal is whether Combs' injury was (1) an injury by accident, (2) arising out of, (3) and in the course of, her employment. See Code § 65.2-101; Briley v. Farm Fresh, Inc., 240 Va. 194, 197, 396 S.E.2d 835, 836 (1990).  If any one of these elements is missing, then Combs' claim is not covered by the Act, Snead v. Harbaugh, 241 Va. 524, 526, 404 S.E.2d 53, 54 (1991), and she can proceed with her personal injury claim in the circuit court.  Thus, we will address each of these criteria seriatim.

### I.  INJURY BY ACCIDENT

This Court recently addressed the requirements of an "injury by accident" in Southern Express v. Green, 257 Va. 181, 509 S.E.2d 836 (1999). There, we held that an "injury by accident" occurs when the injury appears "suddenly at a particular time and place[,] and upon a particular occasion[;]" when it is "caused by an identifiable incident [,]or sudden precipitating event[;]" and when the injury results "in an obvious mechanical or structural change in the human body." Id. at 187, 509 S.E.2d at 839. The circuit court found all these factors present with regard to Combs' injury, and we agree.

At the outset, it must be emphasized that Combs' injury is not the aneurysm itself. Instead, her injury is the aggravation, exacerbation, and/or acceleration of the aneurysm. That injury resulted from the alleged negligent emergency medical care, or lack thereof, that she received from Virginia Power and its EHS employees after she suffered a severe headache during the aerobics class. Thus, Combs' argument that there is no evidence with regard to when the aneurysm initially started leaking or when she experienced the first onset of symptoms is irrelevant to the question whether she sustained an "injury by accident."

The record in this case, in particular Combs' motion for judgment, demonstrates that she suffered an "injury by

6

accident" under Code § 65.2-101.  The particular time, place, and occasion of her injury was at the EHS "quiet room" in Virginia Power's Richmond office, during the two to three hours that elapsed from when she first developed the headache and was taken to the "quiet room" until she was transported to the hospital.  The identifiable or precipitating event was the alleged negligent emergency medical treatment that she received during this span of time.  Finally, Combs' paralysis and cognitive brain damage represent the mechanical or structural changes in her body that resulted from her injury.  Thus, all the requirements of an "injury by accident" are present in this case.  See Winn v. Geo. A. Hormel & Co., 560 N.W.2d 143, 149 (Neb. 1997)(holding that negligent medical treatment at employer's first-aid medical facility may constitute "accident").

## II. ARISING OUT OF EMPLOYMENT

The phrase "arising out of" pertains to the origin or cause of an injury.  County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989); Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938).  In determining whether an injury arises out of employment, we have repeatedly quoted with approval the test enunciated in

7

<u>In re Employers' Liab. Assur. Corp., Ltd.</u>, 102 N.E. 697

(Mass. 1913).  An injury

> arises "out of" the employment, when there is apparent
> to the rational mind upon consideration of all the
> circumstances, a causal connection between the
> conditions under which the work is required to be
> performed and the resulting injury.  Under this test,
> if the injury can be seen to have followed as a
> natural incident of the work and to have been
> contemplated by a reasonable person familiar with the
> whole situation as a result of the exposure occasioned
> by the nature of the employment, then it arises "out
> of" the employment.  But it excludes an injury which
> cannot fairly be traced to the employment as a
> contributing proximate cause and which comes from a
> hazard to which the workmen would have been equally
> exposed apart from the employment.  The causative
> danger must be peculiar to the work and not common to
> the neighborhood.  It must be incidental to the
> character of the business and not independent of the
> relation of master and servant.  It need not have been
> foreseen or expected, but after the event it must
> appear to have had its origin in a risk connected with
> the employment, and to have flowed from that source as
> a rational consequence.

<u>Id.</u> at 697; <u>accord</u> <u>Lucas v. Lucas</u>, 212 Va. 561, 563, 186

S.E.2d 63, 64 (1972); <u>Conner v. Bragg</u>, 203 Va. 204, 208-09,

123 S.E.2d 393, 396-97 (1962); <u>Bradshaw</u>, 170 Va. at 335,

196 S.E. at 686.

In Virginia, we apply an "actual risk test," meaning

that the employment must expose the employee to the

particular danger causing the injury, notwithstanding the

public's exposure generally to similar risks.  <u>Lucas</u>, 212

Va. at 563, 186 S.E.2d at 64.  Thus, if there is a causal

connection between Combs' injury and the conditions of her

employment, then her injury arose out of her employment. See <u>United Parcel Serv. of Am. v. Fetterman</u>, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985) ("An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.").

Combs argues that EHS was not actually a clinic for the treatment of employee health problems and that, therefore, it was not a condition of her employment. Thus, she contends that her injury did not "arise out of" her employment. Assuming that Combs is correct about the purpose of EHS, the fact remains that on the day in question, the risk of employment was the alleged negligent emergency medical treatment by EHS personnel, which aggravated her pre-existing aneurysm. Combs was exposed to this risk or condition of employment solely because she was a Virginia Power employee. The public generally would not have been exposed to the same risk because only Virginia Power employees could utilize EHS. In fact, Combs alleged in her motion for judgment that Virginia Power and its employees owed certain duties to her "so that employees using EHS could do so without harm to themselves and detriment to their well-being," and that the defendants violated those duties, thereby causing injury to her. She

9

further asserted that the employee defendants were acting within the scope of their employment when they allegedly injured her.

Combs, nevertheless, argues that her situation is like that of the employee in Taylor v. Mobil Corp., 248 Va. 101, 444 S.E.2d 705 (1994), because she did not involuntarily, or out of "default[]" as the circuit court found, seek medical treatment at EHS. In Taylor, an employee visited a doctor at his employer's clinic for treatment of a heart condition. The employee ultimately suffered a fatal heart attack at home although the doctor had advised him that he was not suffering from heart disease. Id. at 103-04, 444 S.E.2d at 706-07. This Court concluded that the employee's risk of exposure to negligent treatment by the doctor was not an actual risk of employment because the employee voluntarily opted to use the doctor at the employer's clinic. He was not required to do so by his employer, nor was he treated by that doctor because he became ill at work. Id. at 107, 444 S.E.2d at 708.

In contrast, Combs suffered her severe headache while participating in the aerobics class at Virginia Power's office. While taking part in that class was not required by Virginia Power, EHS personnel treated Combs because of her status as a Virginia Power employee. In fact, the

10

aerobics instructor called EHS when Combs became ill because Virginia Power's EHS coordinator had directed the instructor to do so. Thus, the risk that led to Combs' injury was part of her work environment. See Briley, 240 Va. at 198, 396 S.E.2d at 837.

Additionally, the fact that her injury was the aggravation of a pre-existing condition does not alter the result that her injury arose out of her employment. See Ohio Valley Const. Co. v. Jackson, 230 Va. 56, 58, 223 S.E.2d 554, 555 (1985) ("When an injury sustained in an industrial accident accelerates or aggravates a pre-existing condition, death or disability resulting therefrom is compensable under the Workers' Compensation Act."). Combs' pre-existing aneurysm united with an actual risk of her employment to produce her injury.

### III. IN THE COURSE OF EMPLOYMENT

"The phrase arising 'in the course of' [employment] refers to the time, place, and circumstances under which the accident occurred." Johnson, 237 Va. at 183, 376 S.E.2d at 74. "An accident occurs 'in the course of the employment' when it takes place within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling duties of his employment or engaged in doing something incidental

11

thereto." Bradshaw, 170 Va. at 335, 196 S.E. at 686; accord Lucas, 212 Va. at 563, 186 S.E.2d at 64; Conner, 203 Va. at 208, 123 S.E.2d at 396.

Combs argues she was not performing any duty of her employment at the moment when she initially needed emergency medical treatment. As she correctly notes, the pre-existing aneurysm was not caused by her employment, and she was participating in an aerobics class during her lunch hour when she first experienced the headache. Thus, she contends that "the reason she ended up at EHS was not in any way connected with her employment[,]" and, therefore, that her injury did not occur during the course of her employment. We do not agree.

Combs' position on this issue overlooks several salient facts. First, Combs is not seeking redress for the onset of the symptoms associated with the aneurysm but for the aggravation of that pre-existing condition. The aggravation of the aneurysm occurred after EHS personnel responded to the call for assistance from the aerobics instructor, during Combs' period of employment, and at a place where she could reasonably be if she became ill at work, i.e., the "quiet room." The only reason that EHS responded to that call was because Combs was a Virginia Power employee. Thus, Combs "was injured at a place where

12

she was reasonably expected to be while engaged in an activity reasonably incidental to her employment" by Virginia Power. Briley, 240 Va. at 198, 396 S.E.2d at 837. Her injury therefore occurred "in the course of" her employment.

## CONCLUSION

For these reasons, we conclude that Combs' injury was an "injury by accident arising out of and in the course of [her] employment" with Virginia Power, Code § 65.2-101, and is therefore compensable under the Act. Her action in the circuit court is thus barred by Code § 65.2-307. Accordingly, we will affirm the judgment of the circuit court.

Affirmed.

13